UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LUMBERMEN'S, INC. and LUMBERMEN'S,
INC. FLEXIBLE BENEFITS PLAN,

       Plaintiffs,

v.                                                                 Civil Case No. 12-15606
                                                                   Honorable Patrick J. Duggan

BLUE CROSS BLUE SHIELD OF MICHIGAN,

       Defendant.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS UNDER RULE 12(b)(6)

This case is one of a series brought by private entities and their self-insured health care plans against Blue Cross Blue Shield of Michigan ("BCBSM"), in which the plaintiffs allege that BCBSM violated federal and state law when it charged and collected certain purported hidden fees in administering the plans.[1] Plaintiffs Lumbermen's, Inc. ("Lumbermen's") and Lumbermen's Inc. Flexible Benefits Plan ("Plan") (collectively "Plaintiffs") initiated the present action on December 21, 2012. In their Complaint, Plaintiffs allege that by charging and collecting certain fees, BCBSM violated the

---

[1]Currently there are at least twenty related cases pending in this District. In addition to the present matter, two others have been assigned to the undersigned: *Computer and Engineering Services, Inc., et al. v. Blue Cross Blue Shield of Michigan*, Case No. 12-15611 (filed Dec. 21, 2012) and *Board of Trustees of the Sheet Metal Workers' Local Union No. 80 Insurance Trust Fund v. Blue Cross Blue Shield of Michigan*, Case No. 13-10415 (filed Feb. 1, 2013). On April 19, 2013, this Court denied Plaintiffs' motion to consolidate this action with nine related actions pending before the Honorable Victoria A. Roberts. (ECF No. 26.)

Employee Retirement Income Security Act of 1974 ("ERISA") and Michigan law. Specifically, Plaintiffs asserts the following claims against BCBSM: (I) breach of fiduciary duty in violation of ERISA; (II) engaging in prohibited transactions in violation of ERISA; (III) violation of Michigan's Nonprofit Health Care Corporation Reform Act; (IV) violation of Michigan's Health Care False Claims Act; (V) breach of contract or covenant of good faith and fair dealing; (VI) breach of common law fiduciary duties; (VII) conversion; (VIII) fraud and misrepresentation; and (IX) silent fraud.

Presently before the Court is BCBSM's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  The matter has been fully briefed.  On May 10, 2013, this Court issued a notice informing the parties that it is dispensing with oral argument with respect to the motion pursuant to Eastern District of Michigan Local Rule 7.1(f).  For the reasons that follow, the Court now grants in part and denies in part BCBSM's motion to dismiss.

## I.      Rule 12(b)(6) Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint.  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).  Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . ."  *Bell Atlantic Corp. v.*

2

*Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007).  A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 , 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct at 1966).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]."  *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true.  *Id*.; *see also Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007).  This presumption, however, is not applicable to legal conclusions.  *Iqbal*, 556 U.S. at 668, 129 S. Ct. at 1949.  Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965-66).

## II.    Factual Background

Lumbermen's is a Michigan corporation, located in Grand Rapids, Michigan.  It is

3

a building materials supplier that employs approximately 200 employees.  Lumbermen's

offers health care benefits to its employees through the Plan, which is a self-insured plan.

Plaintiffs have engaged BCBSM to administer the Plan.

To that end, Lumbermen's and BCBSM executed an Administrative Services

Contract ("ASC") effective August 1, 2007.  (Compl. Ex. 1.)  Pursuant to the ASC, the

parties agreed *inter alia* that "BCBSM will process and pay, and [Lumbermen's] . . . will

reimburse BCBSM for all Amounts Billed related to Enrollees' claims . . .".  (*Id*. at 3.)

The ASC defines "Amounts Billed" as "the amount [Lumbermen's] . . . owes in

accordance with BCBSM's standard operating procedures for payment of Enrollees'

claims."  (*Id*. at 1.)  The ASC requires Lumbermen's to assume the following financial

responsibilities, in addition to the Amounts Billed:

> . . .
> 2.    The hospital prepayment reflecting the amount BCBSM determines
>       is necessary for its funding of the prospective hospital
>       reimbursement.
> 3.    The actual administrative charge.
> 4.    The group conversion fee.
> 5.    Any late payment charge.
> 6.    Any statutory and/or contractual interest.
> 7.    Stop Loss premiums, if applicable.
> 8.    Cost containment program fee, if applicable.
> 9.    Any other amounts which are the Group's responsibility pursuant to
>       this Contract, including but not limited to risks, obligations or
>       liabilities, deficit amounts relating to previous agreements, and
>       deficit amounts relating to settlements.
>
> The Provider Network Fee, contingency, and any cost transfer subsidies or
> surcharges as authorized pursuant to 1980 P.A. 350 will be reflected in the
> hospital claims cost contained in Amounts Billed.

4

(*Id*. at Art. III(B).)  The ASC defines the "Provider Network Fee" as "the amount allocated to the Group for the expenses incurred by BCBSM in the establishment, management and maintenance of its participating hospital, physician and other health care provider networks."  (*Id*. at Art. I(L).)

The ASC does not contain pricing terms.  The specific fees to be paid by Lumbermen's were enumerated in a "Schedule A," which was part of the ASC.  (Compl. Ex. 2.)  For each year's ASC there was a corresponding Schedule A.  (*Id*.)  The parties renewed the ASC year after year through 2013.

The ASC requires BCBSM to provide Lumbermen's with detailed quarterly settlements showing Amounts Billed to and owed by Lumbermen's.  (Compl. Ex. 1 at 9.) The quarterly settlements were used to determine the amount Lumbermen's was required to pay BCBSM on an established periodic basis.  Lumbermen's made these payments by wiring funds, i.e. "plan assets", to BCBSM's bank account.

According to Plaintiffs, in 2012 they discovered that BCBSM previously had implemented a scheme to secretly bill self-insured plans higher administrative compensation fees.  The scheme was outlined in an internal BCBSM memo.  (Compl. Ex. 3.)  Set forth in the memo is BCBSM's plan to lower its disclosed administrative fee (thereby giving the illusion of lower costs), while artificially inflating the amounts it reported as hospital claims cost.  Then BCBSM retained as administrative compensation the difference between what it was actually paying hospitals for employee claims and what it reported it was paying for hospital claims.  (*Id*.)  BCBSM concluded that this plan

was needed because customers were threatening to leave BCBSM and/or refusing to pay certain fees that previously were clearly reported. (*Id*.) By including the fees in the hospital claims cost, they were "no longer visible to the customer." (*Id*.) Plaintiffs believe that BCBSM also was including "subsidies" and "surcharges" in these "Hidden Fees." Plaintiffs believe BCBSM has engaged in this scheme since 2007, and maybe even since 1994.

Plaintiffs allege that these fees were not included in BCBSM's quarterly or annual settlement statements or Form 5500's. The latter is a form developed by federal agencies, which employers must file as part of their obligations under ERISA and the Internal Revenue Code. The Form 5500 requires disclosure of total "claims paid," but Plaintiffs assert that BCBSM included the actual claims paid to health care service providers and the undisclosed fees that BCBSM retained as additional administrative compensation.

## III.   The Parties' Arguments

In its motion to dismiss, BCBSM argues that Plaintiffs' ERISA claims are time-barred under the statute's three-year limitations period, 29 U.S.C. § 1113. BCBSM contends that Plaintiffs had actual knowledge of the disputed fees and the obligation to pay those fees in 2007, when Lumbermen's entered into the ASC. BCBSM asserts that the ASC unambiguously provided for the payment of the fees. For that proposition, BCBSM relies on the language of the ASC and the Michigan Court of Appeals' interpretation of that contract in *Calhoun County v. Blue Cross Blue Shield of Michigan*, 297 Mich. App. 1, 824 N.W.2d 202, *leave denied*, 493 Mich. 917, 823 N.W.2d 603

6

(2012).  As to Plaintiffs' state law claims, BCBSM argues that those claims are

preempted by ERISA and, alternatively, fail on their merits.

Plaintiffs respond that the limitations period applicable to their ERISA claims is

six rather than four years because BCBSM engaged in fraud and/or concealment.

Plaintiffs argue that the "act" of charging the fees is what gives rise to the claims rather

than the mention of the fees in the contract.  As to their state law claims, while Plaintiffs

maintain that ERISA does not preempt the claims, they accept Judge Victoria Roberts'

contrary ruling in one of the related cases.  *See* Order Granting in Part and Denying in

Part Pls.' Mot. for Summ. J. and Granting in Part and Denying in Part Def.'s Mot. for

Summ. J. (hereafter "Order"), *Borroughs Corp. et al. v. Blue Cross Blue Shield of*

*Michigan*, No. 11-12565 (E.D. Mich. Sept. 7, 2012) (ECF No. 112).

## IV.  Applicable Law and Analysis

### A.    Statute of Limitations

ERISA contains the following limitations period applicable to Count I and II of

Plaintiffs' Complaint:

> No action may be commenced under this subchapter with respect to a
> fiduciary's breach of any responsibility, duty, or obligation under this part,
> or with respect to a violation of this part, after the earlier of–
>
> (1) six years after (A) the date of the last action which constituted a part of
> the breach or violation, or (B) in the case of an omission the latest date on
> which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual
> knowledge of the breach or violation;

> except that in the case of fraud or concealment, such action may be
> commenced not later than six years after the date of discovery of such
> breach or violation.

29 U.S.C. § 1113.  The longer statute of limitations for fraud or concealment "'requires

the plaintiffs to show (1) that [the] defendants engaged in a course of conduct designed to

conceal evidence of their alleged wrong-doing and that (2) [the plaintiffs] were not on

actual or constructive notice of that evidence, (3) despite their exercise of diligence.'"

*Brown v. Owens Corning Inv. Review Comm.*, 622 F.3d 564, 573 (6th Cir. 2010) (quoting

*Larson v. Northrop Corp.*, 21 F.3d 1164, 1172 (D.C. Cir. 1994) (alteration in *Larson*)

(additional citation omitted)).

Both parties to the present action agree that application of ERISA's statute of

limitations involves a "two-step" process.  (Def.'s Br. in Supp. of Mot. at 11, citing

*Ziegler v. Conn. Gen. Life Ins.* Co., 916 F.2d 548, 550 (9th Cir. 1990)); (Pls.' Resp. Br. at

9); *see also Gluck v. Unisys Corp.*, 960 F.2d 1168, 1178 (3d Cir. 1992).  The first step is

"the identification and definition of the underlying ERISA violation upon which the

fiduciary breach claim is founded."  *Gluck*, 960 F.2d at 1178.  Next, "[t]wo temporal

determinations must . . . be made: the date of the last action which formed a part of the

breach and the date of the plaintiff's actual knowledge of the breach."  *Id*.

Plaintiffs allege that BCBSM violated ERISA by, among other things:

a)      Charging undisclosed fees;

b)      Failing to disclose those fees;

c)      submitting false and misleading quarterly settlement statements and

annual summaries;

(d)       submitting false and misleading Form 5500 reports;

. . .

g)       Otherwise engaging in a pattern of conduct designed to mislead,
         confuse, deceive and otherwise trick Plaintiffs into paying more for
         its services than Plaintiffs were obligated to pay.

(Pls.' Compl. ¶ 81.)  Plaintiffs allege that they only became aware that Lumbermen's had

been charged the disputed fees in 2012.  (*Id*. ¶ 61.)

Without looking beyond Plaintiffs' Complaint– as required in deciding BCBSM's

Rule 12(b)(6) motion– the Court cannot determine whether the disputed fees BCBSM

charged Lumbermen's were in fact revealed in the ASC.  This includes what specific fees

could be charged and a basis for calculating what the fees would be.  The Court does not

find this question resolved by the Michigan Court of Appeals' decision in *Calhoun

County v. Blue Cross Blue Shield Michigan*, 297 Mich. App. 1, 824 N.W.2d 202 (2012).

Moreover, as Judges Roberts and Drain already have held in related cases, the resolution

of the plaintiff's state law claims in *Calhoun County* does not control Plaintiffs' ERISA

counts.  *See* Order at 7-9*, Borroughs Corp.*, No. 11-12557 (E.D. Mich. Sept. 7, 2012)

(ECF No. 112); Order Granting in Part and Denying in Part Def.'s Mot. to Dismiss at 9,

*East Jordan Plastics, Inc., et al. v. Blue Cross Blue Shield of Michigan*, No. 12-15621

(E.D. Mich. May 3, 2013) (ECF No. 27). Furthermore, Plaintiffs allege that BCBSM

violated ERISA by not only failing to disclose the fees, but by concealing the actual

charges in the settlement statements and Form 5500's.  According to Plaintiffs'

9

Complaint, as a result of BCBSM's concealment, they only discovered that Lumbermen's was in fact being charged the fees in 2012. Again, the Court may not look beyond Plaintiffs' pleading to find otherwise.

In short, the Court cannot conclude at this stage of the proceedings when Plaintiffs acquired actual knowledge of the ERISA violations alleged. As such, it denies BCBSM's motion to dismiss Plaintiffs' ERISA claims based on the applicable statute of limitations.

### B.    State Law Claims

As indicated earlier, Plaintiffs accept Judge Roberts' ruling in a related case that ERISA preempts the state law claims asserted in their Complaint. *See supra*. In any event, this Court agrees with Judge Roberts.

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The Sixth Circuit and Supreme Court have recognized "the broad scope of ERISA's 'expansive pre-emption provision[ ] . . .'" *Briscoe v. Fine*, 444 F.3d 478, 497 (6th Cir. 2006) (quoting *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 208, 124 S. Ct. 2488 (2004); *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir.1991) (recognizing "that virtually all state law claims relating to an employee benefit plan are preempted by ERISA")). Here, where all of Plaintiffs' state law claims arise out of BCBSM's alleged misconduct connected with its operation of the Plan, ERISA preemption applies. *See Briscoe*, 444 F.3d at 497-98.

As such, the Court is granting BCBSM's motion to dismiss Plaintiffs' state law

10

claims.

**V.      Conclusion**

For the reasons set forth above, the Court cannot conclude at this juncture that

Plaintiffs' ERISA claims are time-barred.  ERISA, however, preempts Plaintiffs' state

law claims.

Accordingly,

**IT IS ORDERED**, that Defendant's motion to dismiss under Rule 12(b)(6) is

**GRANTED IN PART AND DENIED IN PART** in that Plaintiffs' state law claims

(Counts III-IX), only, are **DISMISSED WITH PREJUDICE**.

Dated: May 13, 2013                          s/PATRICK J. DUGGAN
                                             UNITED STATES DISTRICT JUDGE

Copies to:
Thomas Van Dusen, Esq.
G. Christopher Bernard, Esq.
Matthew R. Rechtien, Esq.
Perrin Rynders, Esq.
Aaron M. Phelps, Esq.
Stephen F. MacGuidwin, Esq.